J-A02030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KJETIL SPONE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RAFFAELLA SPONE | |
| Appellee | No. 1143 EDA 2013 |

Appeal from the Order Entered March 20, 2013
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2007-31635 Pacses No. 792109797

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.                    **FILED OCTOBER 01, 2014**

K.S. ("Father") appeals from the support order and supplemental support order, both entered March 20, 2013, which awarded child support to R.S. ("Mother").  Father raises a plethora of issues concerning his obligation with respect to summer camp costs, parochial school tuition, medical costs, and child care costs for the parties' two minor children.  After careful review, we affirm on all but one issue as indicated below; in relation to the claim involving Father's health insurance contribution, we vacate and remand.

The underlying facts of the case are fully set forth in the court's three-part support order dated March 20, 2013, its findings and conclusions, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

accompanying supplemental order also dated March 20, 2013, and its opinion filed June 12, 2013. Therefore, we will provide only a brief summary:  Father and Mother were married on January 16, 1999.  The parties have two minor children:[1]  (1) H.S., born in January of 2000, now age 14; and (2) A.S., born in April of 2004, now age 10 (collectively, "the Children").  On December 20, 2007, Father filed a complaint in divorce.  Prior to the parties' divorce, Father moved to Anchorage, Alaska with his girlfriend in April of 2008.  On November 16, 2009, the divorce decree was entered.

The trial court set forth the extensive procedural history as follows:

On May 14, 2010, the parties appeared with their respective counsel at a Support hearing before the Honorable Emanuel A. Bertin.  The parties stipulated to the total support for the calendar year 2008 and the basic support order for the calendar year 2009, but had oral argument regarding Father's contribution to child care, private school and/or summer camp for 2009.  On June 25, 2010, there was additional testimony and argument with respect to child care, private school and/or summer camp for 2009 and the amount of support for the year 2010.  On July 14, 2010, Judge Bertin issued a Supplemental Support Memorandum and Order, addressing child care, private school and summer camp for 2009 and the amount of support from January 1, 2010 – Forward.  Judge Bertin ordered Father to pay the following for 2009:  (1) 60% of $7,500.00 for child care, totaling $4,500.00; (2) 60% of $6,525.00 for private school tuition, totaling $3,915.00; and (3) 60% of $1,600.00 for summer camp, totaling $960.00.  From January 1, 2010 – Forward, Father's net monthly income was $1,325.24 based on his Alaskan unemployment compensation.  From January 1,

---

[1]  As minor children are involved in this case, we identify them by their initials.

2010 – Forward, Father was ordered to pay $440.00 per month for two children plus contribute $73.25 per month to Mother for health insurance, which totaled $513.25 per month for child support. As a result of Father receiving unemployment compensation, Father was not required to pay for child care, private school and/or summer camp.

On July 27, 2010, Father filed a Motion for Reconsideration of the Supplemental Support Memorandum and Order of July 14, 2010. In response, Judge Bertin granted several of Father's requests and reduced Father's total private school contribution of $2,628.00 for 2009. On September 23, 2010, Father appealed [the trial court]'s August 24, 2010 Order, addressing Father's Motion for Reconsideration. On August 5, 2011, the Superior Court dismissed Father's Appeal.[2]

On October 12, 2011, Mother and Father (via telephone) appeared before Master Arthur Klein, Esquire ("Master Klein") at a Master's Conference on Mother's Petition to Modify Support filed on or about June 21, 2011. On November 22, 2011, Master Klein recommended the following: (1) Mother's net income after legal deductions was $2,483.00 per month; and (2) Father's net earning capacity considering, background, education and experience was $5,600.00 per month based on the April 15th, 2011 Contempt hearing before the Honorable Carolyn T. Carluccio and the parties' stipulation dated February 10, 2009, discussing Father's earnings. Master Klein recommended Father to pay $1,229.00 per month for two children, plus $218.00 per month for medical insurance provided by Mother, and a monthly arrears of $145.00 which totaled $1592.00 per month.

On December 5, 2011, Father filed Support Exceptions to Master Klein's Support recommendations, resulting in a hearing before [the trial court] on April 12, 2012. At the hearing, Mother appeared with counsel and Father appeared *pro se*. At the conclusion of the hearing, [the trial court] issued an Order, denying Father's Support Exceptions.

---

2 ***Spone v. Spone***, 29 A.3d 842 [2726 EDA 2010] (Pa. Super. 2011) (unpublished memorandum) (appeal dismissed because Father did not request that certain transcripts be included in the certified record and therefore, the panel could not conduct a meaningful review on appeal).

Prior to the hearing on April 12, 2012, Mother filed a Petition for Sanctions on April 9, 2012. On April 20, 2012, Mother filed a Petition for Contempt, and Mother filed a Petition for Child Care, Parochial School and Summer Camp on April 27, 2012.

On May 4, 2012, Father, through newly hired counsel, filed a Motion for Reconsideration with Supplemental Brief, requesting [the trial court] reconsider its Order dated April 12, 2012. On May 14, 2012, Father appealed [the trial court]'s Order dated April 12, 2012. On the same day, [the court] vacated its Order of April 12, 2012 and granted Father's Motion for Reconsideration. On July 12, 2012, the Superior Court dismissed Father's appeal.

On June 22, 2012, [the trial court] issued an Order regarding Father's Motion for Reconsideration. Pursuant to the Order of June 22, 2012, [the court] found that Mother's net income after legal deductions was $2,637.00 per month and Father's net income after legal deductions was $3,672.00 per month. [The court] ordered Father to pay $888.00 per month for two children plus $101.00 per month for medical insurance provided by Mother, totaling $989.00 per month. Additionally, Father was ordered to pay $99.00 per month on arrears and 58% of all unreimbursed medical expenses. On July 5, 2012, Father filed a Motion for Reconsideration of [the court]'s June 22, 2012, Support Order, which [the court] granted by Order dated July 13, 2012.

On July 16, 2012, [the trial court] held a hearing on Mother's Petition for Child Care, Parochial School and Summer Camp due to the timely nature and gravity of impact upon the children. At the hearing, both parties were represented by counsel. A hearing never occurred because counsel reached an agreement on behalf of the parties. The Order dated July 16, 2012, granted in part and continued in part Mother's Petition for Child Care, Parochial School and Summer Camp. Based on the agreement, the Order directed Father to pay $1630.30 for the children's summer camp in accordance with his 60% contribution.

On August 15, 2012, Father appealed [the trial court]'s Order of July 16, 2012, which was later dismissed by Superior

Court on October 23, 2012. On August 28, 2012, Father filed a Motion for Reconsideration of [the court]'s Order of July 16, 2012, which [the court] granted by Order dated August 30, 2012. On October 11, 2012, Mother filed an Emergency Motion for an Evidentiary Hearing on Summer Camp Costs, Parochial School, Medical Costs and Child Care Costs. On December 3, 2012, Mother filed another Emergency Motion for Father to comply with the [c]ourt's Order of November 22, 2011 and contribute towards medical insurance.

On January 9, 2013, both parties appeared before [the trial court] with their respective counsel for a one day hearing. On the same day, Father filed a Reply to Mother's Emergency Motion for an Evidentiary Hearing on Summer Camp Costs, Parochial School, Medical Costs and Child Care costs. [The trial court] issued a Supplemental Support Order dated March 20, 2013 and a three-part Support Order dated March 20, 2013. Thereafter, no post-trial motions were filed. On April 18, 2013, Father filed a timely Notice of Appeal to the Pennsylvania Superior Court from [the court]'s Supplemental Support Order dated March 20, 2013. On April 22, 2013, in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, [the court] ordered Father to file a Concise Statement of Matters Complained of on Appeal within twenty-one days from the date of the Order. Said statement was received on May 13, 2013.

Trial Court Opinion, 6/12/2013, at 1-5.

Father now raises the following 12 issues on appeal:

A.

produce adequate documentary evidence to substantiate her testimony?

E.

An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Kimock v. Jones***, 47 A.3d 850, 853-854 (Pa. Super. 2012), *quoting*

***Brickus v. Dent***, 5 A.3d 1281, 1284 (Pa. Super. 2010).

Based on our disposition, we begin with Father's seventh claim, in which he asserts the court erred in its determination of the portion of the health insurance contribution attributed to Father because the calculation was based on the total amount paid rather than the amount paid for the Children only. Father's Brief at 22.

Pennsylvania Rule of Civil Procedure 1910.16-6(b) provides for the payment of health insurance coverage, in relevant part, as follows:

(1) A party's payment of a premium to provide health insurance coverage on behalf of the other party and/or the children shall be allocated between the parties in proportion to their net incomes, including the portion of the premium attributable to the party who is paying it, as long as a statutory duty of support is owed to the party who is paying the premium. If there is no statutory duty of support owed to the party who is paying the premium, the portion attributable to that person must be deducted from the premium as set forth in subdivision (2) below. Premiums paid by a party to whom no duty of support is owed to cover himself or herself only and that are not necessary to cover the other party or a child as part of a support order shall not be apportioned between the parties. If health insurance coverage for a child who is the subject of the support proceeding is being provided and paid for by a third party resident of either party's household, the cost shall be allocated between the parties in proportion to their net incomes. If the obligor is paying the premium, then the obligee's share is deducted from the obligor's

- 7 -

basic support obligation. If the obligee is paying the premium, then the obligor's share is added to his or her basic support obligation. Employer-paid premiums are not subject to allocation.

(2) When the health insurance covers a party to whom no statutory duty of support is owed, even if that person is paying the premium as set forth in subdivision (1) above, or other persons who are not parties to the support action or children who are not the subjects of the support action, the portion of the premium attributable to them must be excluded from allocation. In the event that evidence as to this portion is not submitted by either party, it shall be calculated as follows. First, determine the cost per person by dividing the total cost of the premium by the number of persons covered under the policy. Second, multiply the cost per person by the number of persons who are not owed a statutory duty of support, or are not parties to, or the subject of the support action. The resulting amount is excluded from allocation.

Pa.R.C.P. 1910.16-6(b).

Here, the trial court concedes that it erred in determining the portion

of health insurance contribution attributed to Father:

Case law provides that a defendant should not be held responsible for that portion of a health insurance which is attributable to an ex-spouse. **Mayer v. Gayer**, 835 A.2d 1281, 1285 (Pa. 2003). However, it is submitted that this principal applies only to those circumstances where insurance coverage would be available for children only and where the premium attributable to the ex-spouse can thereby be segregated from that attributable to the children.

In this present case, it was difficult to determine the actual cost of the medical coverage premium attributable to the children only. Pa.R.C.P. 1910.16-6(b)(2) mandates that when the actual cost of the premium attributable to the children is not known or cannot be verified, it shall be calculated as follows: "First, determine the cost per person by dividing the total cost of the premium by the [] number of persons covered [under] the policy. Second, multiply the cost per person by the number of persons who are not [owed a statutory duty of support, or are

not] parties to, or the subject of the support action. The resulting amount is excluded from allocation." *Id.* This Court concedes that it erred by not applying Rule 1910.16(b)(2) to determine the health insurance premium attributed to the children only. As such, this Court respectfully requests to be allowed to recalculate the health insurance premium in accordance with Rule 1910.16(b).

Trial Court Opinion, 6/12/2013, at 18-19.

Upon review, we agree with the trial court's assessment and conclude the court erred and abused its discretion in failing to properly allocate Father's medical insurance premium payments in accordance with Pa.R.C.P. 1910.16-6(b)(2), resulting in a manifestly unjust result. Accordingly, we vacate that portion of the trial court's order setting Father's basic monthly support obligation and remand for recalculation to include an appropriate allocation of Father's medical insurance payments in accordance with Pa.R.C.P. 1910.16-6(b). The trial court is free to hold further hearings if it deems them necessary to address this issue.

Turning to Father's first argument, he asserts the court erred by denying that Father properly objected to the Children's attendance at parochial school based on the high quality of the public schools in the vicinity of their residence. Father's Brief at 10. Specifically, Father proclaims there was no evidence presented of a comparison between the public and parochial schools because that was not the source of contention at the January 9, 2013, hearing. *Id.* Rather, Father states the issue was the

parties' joint ability to pay for the children's education and he claims he raised this issue during closing arguments. ***Id.***

Under Pennsylvania Rule of Civil Procedure 1910.16-6(d), the trial court may direct the parent-obligor to contribute to private school tuition if it is a "reasonable need:"

> **Private School Tuition. Summer Camp. Other Needs**. The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P. 1910.16-6(d).

> Thus, the Support Guidelines allow the court to include private school tuition in the support amount if the court determines that the need for private school is a reasonable one. In determining whether a need is reasonable, this Court has stated:
>
> > A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

***Murphy v. McDermott***, 979 A.2d 373, 377 (Pa. Super. 2009), *quoting* Pa.R.C.P. 1910.16-6(d). Accordingly, we "are to uphold the trial court's decision to order private school contributions so long as the court did not abuse its discretion in determining that: (1) the child will 'benefit,' and (2)

private schooling is consistent with the family's prior standard of living and station in life." *Id.*

Here, the court found the following:

> Father asserts that [the court] erred in requiring Father to contribute to parochial school education for the parties' two children as the public schools where the children reside are of high quality. The law is well-established in Pennsylvania that in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. *Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. Ct. 2000). ["]An appellate court will not ordinarily reverse the court below for not doing what it was not asked to do, but will treat matter not objected to in the court below as waived." *Whistler Sportswear, Inc. v. Rullo*, 433 A.2d 40, 45 (Pa. Super. Ct. 1981), *citing Logan v. Cherrie*, 282 A.2d 236 (Pa. 1971). During the parties' closing argument, Father argued that Mother resides in a very good school district where the children's attendance would alleviate some of the financial contributions. However, Father never explicitly raised an objection to the children attending parochial school based on the exemplary public schools near the children's residence. There was no evidence presented that the public schools located within the children's residence are of high quality and the children would benefit from public education. Likewise, there was no submitted evidence showing the children are not benefiting from a parochial school education. Accordingly, [the court] cannot consider something it was not asked to do. Therefore, this issue is waived.

Trial Court Opinion, 6/12/2013, at 7-8.

We agree with the court's conclusion. Father never specifically objected to the Children attending parochial school based on the public schools in the area nor did he present evidence that the Children would benefit more from the public schools. Rather, during closing argument, Father's counsel alleged that Mother could not make Father pay $5,000.00

- 11 -

because the children lived with her and she was making unilateral decisions.

N.T., 1/9/2013, at 129. Moreover, counsel stated:

> [Father]'s not a bank. And, at some point, there has to be, looking at a situation and making a decision, that some of these things can't be afforded. And because we want things doesn't mean that we have to have them. She has a very, very, very good school district. That would take away some of the financial obligations that she's speaking about, take her stress away. And she's clearly stressed by her financial situation. It's got to come out in the household. I don't know how that's in the best interests of the children – and, also, not ask [Father] to be a bank.

*Id.* Counsel's statements during closing argument merely amounted to a contention that the Children's attendance at a public school would alleviate some of the financial contributions for Mother. Father never objected that the private schooling was not reasonable based on the fact that it did not benefit the Children or was not consistent with the family's prior standard of living and station in life.

Furthermore, to the extent Father argues the court erred because the actual issue was the parties' joint ability to pay for the children's education, we find this argument unavailing. In reaching the conclusion that private school was reasonable, the trial court considered the incomes of both parties, as well as other relevant factors, including that both Children had attended the parochial school since they were in kindergarten, stating:

> This Court finds from the totality of the evidence [the] cost of the school to be reasonable, that the children will benefit from the same and the schooling is consistent with the family's standard of living and station in life prior to the separation of the parties. Moreover, this Court finds that parochial school

expenses are reasonable based on Father's own testimony of his gross annual income of $55,000.00 per year.

Supplemental Order, 3/20/2013, at 14-15. Additionally, in its Rule 1925(a)

opinion, the court expounded upon its finding:

The total tuition amount for both children to attend Mary Mother of the Redeemer Catholic Parochial School ("MMR") is $6,470.00 per year, which includes Mother's parishioner rate of $780.00 and a tuition fee of $5,690.00. The Court concluded that the tuition amount for both children to attend MMR is reasonable. The record establishes that children have known only private school. Prior to the parties' separation, [H.S.] attended Gwynedd Friends preschool and enrolled at MMR for kindergarten. At the time of the hearing, [H.S.] was 12 years old, in seventh grade and attended MMR for the past eight years. [A.S.] naturally followed in the footsteps of her big sister. Prior to the parties' separation, [A.S.] attended Gwynedd Friends, a private school, starting at age 2. Like [H.S.], [A.S.] enrolled at MMR for kindergarten. At the time of the hearing [A.S.] was 8 years old, in third grade and attended [] MMR for the past four years. The entire record shows that the children have and are benefiting from their private school education, commenced by agreement[1] and encouragement of both parents. As a result, Father was court-ordered to contribute to the children's parochial school education in 2009. In 2010, Father was relinquished from his obligation towards private school tuition when Father's income was based on his unemployment compensation.

[1] The previous Court determined that Father actually searched out and investigated MMR and initiated steps to select the school for [H.S.], to which [M]other agreed in the ultimate mutual decision of the parents. Both parents loved the small classrooms, the teachers, the warm and friendly environment and thought it so perfect for [H.S.]'s development that they looked at no other schools. *See* Trial Court Opinion, 10/5/10, at 6.

On January 9, 2012, Father resumed full-time employment, earning an annual income of $55,000.00 per year. Although Father's annual income is $30,000.00 less than what he made in 2008 at Draeger Medical, this Court determined that Father still has a stringent obligation to support his children even

- 13 -

if it causes him some hardship or requires sacrifice. Moreover, Father's resumption of his prior obligation to pay parochial school tuition serves the best interest of the children.

Trial Court Opinion, 6/12/2013, at 11 (some citations omitted). We agree with the court's sound reasoning and emphasize the following:

The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses. The duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. As this duty is absolute, it must be discharged by the parents even if it causes them some hardship.

*Kimock*, 47 A.3d at 855, *quoting* *Yerkes v. Yerkes*, 824 A.2d 1169, 1171 (Pa. 2003) (internal citations and quotation marks omitted). Here, Father failed to present any evidence at the January 9, 2013, hearing that the Children's parochial school obligation was unreasonable or that Father even suffers some kind of hardship. Accordingly, Father's first argument fails.

In Father's second argument, he claims the court's examination of the family's station in life and standard of living in comparison to that under which the court initially ordered payment for parochial school was in error. He asserts the court misconstrued his issue, stating:

The Trial Court states that Father raises an argument that the Court's deviation from the Child Support Guidelines was inappropriate. While the Trial Court understood this to mean that Father believes there was a deviation, as that term of art is applied pursuant to Pa.R.C.P. 1910.16-5, Father meant that the inclusion of the parochial school expense pursuant to Pa.R.C.P. 1910.16-6(d) was an inappropriate adjustment, not that the Court deviated from the Child Support Guidelines in the sense explicated in Pa.R.C.P. 1910.16-5.

- 14 -

Father's Brief at 12 (citations omitted). Moreover, Father states, "[T]he current financial reality of Mother and Father must be a part of the analysis." *Id.* at 13. He argues that because the Children "are not immune from the stresses of their parents, one must wonder if the best interests of the [C]hildren are served by continuing them in parochial school." *Id.* at 15. Further, he states "Mother has never demonstrated the benefit of educating the [C]hildren in parochial school and if any such benefit would not be offered in a public school." *Id.*

Contrary to Father's argument, the "burden of demonstrating a material and substantial change rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." *Summers v. Summers*, 35 A.3d 786, 789 (Pa. Super. 2012). Here, Father is the moving party. Other than mere allegations, Father has not presented any evidence, as indicated above, that the Children's parochial school was unreasonable and furthermore, he has failed to meet his burden of demonstrating that a material and substantial change has occurred, in which he can no longer meet his obligation regarding the Children's schooling. We rely on the court's analysis as set forth in the prior issue and need not address this issue further. Accordingly, Father's second argument fails.

In his third issue, Father argues the court erred in finding that the child care expenses were reasonable. While he admits that both parties will

- 15 -

incur child care expenses, "he believes that it is in the best interests of the children for Mother to explore different employment opportunities so that the significant cost of child care may be reduced or eliminated." Father's Brief at 16. Specifically, he suggests that Mother "[sh]ould instead maintain employment during the day and be home with the children during the hours they sleep" so that the parties can reduce the amount of child care payments. *Id.* at 17.

The allocation of childcare expenses is governed by Pennsylvania Rule of Civil Procedure 1910.16-6(a), which provides, in pertinent part:

> Reasonable child care expenses paid by either parent, if necessary to maintain employment or appropriate education in pursuit of income, shall be allocated between the parties in proportion to their net incomes and added to his and her basic support obligation.

Pa.R.C.P. 1910.16-6(a).

We initially note that Father, in his Rule 1925(b) concise statement, did not include the issue that Mother should maintain daytime employment in order to reduce the childcare expenses.[3] Consequently, the trial court did not address that claim in its Rule 1925(a) opinion. Therefore, Father has

---

[3] Rather, in his concise statement, Father states: "The Trial court erred in determining that childcare expenses of $1,560.00 a month (for children ages 9 and 13) incurred by the mother were reasonable when said childcare expenses represented more than half of the gross monthly salary of mother (gross biweekly salary of mother determined to be $1,430.86)." Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b), 5/13/2013, at unnumbered 2.

waived this issue on appeal. *See* Pa.R.A.P. 1925(b)(3)(iv) (dictating "that any issue not properly included in the Statement … shall be deemed waived"). Nevertheless, relative to the reasonableness of the childcare expenses in general, we agree with the trial court's rationale.

In its Rule 1925(a) opinion, the court found the following:

Although the cost of childcare in this case is costly there is nothing in the record to indicate that it is not reasonable under the circumstances. Here, Mother has physical custody of the children year-long because Father relocated to Alaska. As a single parent, solely providing for the children, it is crucial that Mother maintains her employment. Childcare expenses are incurred as a result of Mother working overnight shifts on Sunday, Tuesday, and Thursday from 5:00 pm until 7:00 am. Because Father lives in Alaska, Father cannot assume childcare responsibilities. Th[e] Court noted that maternal grandmother cannot adequately assist Mother with childcare because she is 86 years old and her heath is unfortunately declining.

The record shows that Mother has used the same overnight childcare sitter since 2008 and has continued to pay her $10.00 per hour for her services, which Father contributed to as court-ordered from June 2008 until January 2010. Th[e] court noted that Mother researched hiring a nanny to provide childcare instead, but the costs were substantially greater, requiring a finder's fee, health insurance for the nanny, and use of a car. Additionally Father presented no evidence of alternative childcare services or that the cost of the overnight childcare used is exorbitant when compared with other child care services available.

Th[e] Court concluded that the overnight childcare sitter is beneficial in cases of emergency. In addition, the sitter helps the children with their homework, provides meals and assists with bedtime and early morning school preparation. Although [H.S.] is now 13 years old (she was 12 at the hearing on January 9, 2013), th[e] Court reasoned that it is unfair for a 13 year old, who is faced with her own adolescent issues, to be required to produce a safe and productive environment for her younger sister and herself. Accordingly, an overnight childcare

sitter is in the best interests of the children. Based on the record of this case, the childcare incurred by Mother is reasonable and necessary for her to maintain employment.

Trial Court Opinion, 6/12/2013, at 13-14.

The Pennsylvania Rules of Civil Procedure, with respect to child support actions, are explicit that reasonable child care expenses are the responsibility of both parents if necessary to maintain employment. ***Kersey v. Jefferson***, 791 A.2d 419, 425 (Pa. Super. 2002). The record supports the trial court's conclusions regarding the reasonableness and necessity of Mother's child care expenses with regard to maintaining her employment. Therefore, Father's third argument is without merit.

In Father's fourth argument, he contends the trial court erred in accepting Mother's testimony regarding the child care expenses when Mother did not produce adequate documentary evidence to substantiate her testimony. He states the court "failed to take into consideration vacation or personal time Mother used during which a babysitter was not necessary." Father's Brief at 18. Moreover, he argues the court "accepted Mother's representations of the children's expenses without substantiation of their full amount. Mother did offer some cancelled checks for a small fraction of the total amount claimed, but because she did not issue the babysitter a 1099 or W-2, it cannot be determined what the true amount expended was." ***Id.*** at 19. Therefore, Father concludes he should not be "obligated to pay a portion

of an expense for which the [t]rial [c]ourt had scant documentation to even establish the actual expended amount." ***Id.***

The record reflects that Mother incurs a child care expense of $1.560.00 per month or $390.00 per week. N.T., 1/9/2013, at 14-15. Mother submitted checks made to the babysitter, Laura Rehak, for her services. ***Id.*** at 13. Mother pays Rehak $10.00 per hour from 5:15 p.m. to 7:15 a.m. the following morning. ***Id.*** at 13-14. She testified that up until the date of the hearing, the sitter had provided care for the past six years and has never asked for an increase in pay. ***Id.*** at 12, 15. Mother also noted there is no outside facility that could care for her children overnight while she is working. ***Id.*** at 12.

In its March 20, 2013, supplemental order, the court indicated "Father failed to submit proof that the cost of securing competent child care is exorbitant compared with other child care services available in the area." Supplemental Order, 3/20/2013, at 13. Moreover, in its Rule 1925(a) opinion, the court found the following:

> In this instant case, Mother incurs childcare expenses of $1,560.00 per month to maintain employment. The record evidences that Mother submitted photocopies of checks issued to the children's childcare sitter, Laura Rehak as Exhibit M-3. Th[e] Court noted that Father did not object to the admission of Exhibit M-3. These checks, along with Mother's credible testimony accurately evidence that she pays Laura Rehak $10.00 per hour for her services. The record also shows that Mother has paid Laura Rehak the same rate since 2008, when Father was ordered to contribute to childcare. Th[e] Court accurately determined that Mother incurs $1,560.00 per month for childcare based on the photocopies of childcare payments and her credible

- 19 -

testimony. Thus, there was sufficient evidence for th[e] Court to order Father to contribute to childcare expenses.

Trial Court Opinion, 6/12/2013, at 15.

We note it is well-settled that the trial court, sitting as the finder of fact, is free to weigh the evidence and assess the credibility of the witnesses. *Green v. Green*, 783 A.2d 788, 791 (Pa. Super. 2001). Here, the court found Mother's testimony regarding child care expenses credible. Moreover, Father could have called Rehak as a witness at the January 9, 2013, hearing but he did not. Likewise, he did not submit any evidence that the child care expense was unreasonable. Rather, Father makes unsubstantiated assertions that Mother has not provided proof of her child care expenses or that what she did provide was inadequate. Accordingly, Father's fourth argument fails.

Next, Father argues the trial court's calculation of the federal child care tax credit was in error. He states that when the court used Pennsylvania Child Support Guideline Worksheets to calculate Father's obligation for 2012 and 2013, it erred in its computation because (1) Mother could only get the child care tax credit for a "qualifying child", who was an individual under the age of 13, (2) their oldest daughter had turned 13 on January 17, 2013, and (3) therefore, she was no longer considered a "qualifying child." Father's Brief at 20. Moreover, he contends:

Because there is only one qualifying child for 2013, the child care tax credit is up to $3,000 instead of up to $6,000 for 2012 when there were two qualifying children. Yet, according to

the Family Law Software, the child care tax credit was reduced by merely $60 between 2012 and 2013. Because of this anomaly, the calculation for either or both 2012 and 2013 is inaccurate based on the child care tax credit. Therefore, the guidelines should be run again.

*Id.*

We note that Father fails to explain how this calculation alters or affects his obligation pursuant to Pa.R.C.P. 1910.16-6(a)(1-2). Moreover, like his third issue, Father also did not include this claim in his Rule 1925(b) concise statement.[4] As such, the trial court did not address the claim in its Rule 1925(a) opinion. Accordingly, Father has waived this issue on appeal. *See* Pa.R.A.P. 1925(b)(3)(iv) (dictating "that any issue not properly included in the Statement … shall be deemed waived").

In Father's sixth claim, he argues the court erred in requiring him to reimburse Mother for the Children's summer camp because he was not consulted about these expenses pursuant to the custody agreement. Father's Brief at 20, 22. He relies on *Horowitz v. Horowitz*, 600 A.2d 982 (Pa. Super. 1991) to support his argument. *Id.* at 21. Moreover, he states he "is under no obligation to continue to pay for summer camp just because

---

[4] Rather, in his concise statement, Father states: "The Trial Court erred in calculating father's support order as it failed to reduce the total childcare expenses twenty-five percent (25%) to reflect the federal childcare tax credit available to the mother." Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b), 5/13/2013, at unnumbered 2.

he has paid so in the past." *Id.* at 22. He contends he merely did so because he was under court order. *Id.*

Like private school tuition, the court may direct the obligor to contribute to summer camp costs if it is a "reasonable need." *See* Pa.R.C.P. 1910.16–6(d).

Here, Mother testified that A.S. attends gymnastics summer camp in addition to year-round gymnastics training. N.T., 1/9/2013, at 20. Mother stated that the parties' other daughter, H.S., attends volleyball camp, which she "highly excels" at and "enjoys." *Id.* at 21.

The court found the summer camp expenses were reasonable based on the following:

> Th[e] Court did order Father to pay a total of $278.00 for both children's summer camp expenses because th[e] Court determined that the summer camp expenses were reasonable and consistent with the family's standard of living and station in life. *See Holland v. Holland*, 663 A.2d 768, 769 (Pa. Super. Ct. 1995) (holding daughter's equestrian activities were important to her well-being and constituted "other needs," which were not specifically addressed by guidelines); *Marshall v. Marshall*, 591 A.2d 1060, 1063 (Pa. Super. Ct. 1991) (holding music lessons, dance lessons, and racquet and swim club memberships were reasonable needs, which were not addressed by guidelines). Here, [A.S.]'s gymnastics summer camp expense for 2012, totaled to $336.00 and [H.S.]'s volleyball summer camp expenses for 2012, totaled $150.00. Th[e] Court noted that Haley attended summer camp prior to the parties' separating. Additionally, Father contributed to summer camp expenses for the calendar year of 2009. Th[e] Court also noted that Father testified that he mailed Mother $252.00 for his children's summer camp. Although this is contested by Mother, th[e] Court concluded that Father's alleged summer camp contribution evidences his consent to contribute to the children's summer camp expenses. Based on the record of this case, th[e]

Court found that the summer camp expenses for both children are reasonable based on the parties' standard of living. Moreover, the children are deserving of it, as it enhances their socialization and is a cost both parents should happily incur. Accordingly, the best interest of the children is served by maintaining their standard of living and station in life.

Trial Court Opinion, 6/12/2013, at 17-18.

We agree with the court's determination that there was sufficient testimony that summer camp was a reasonable need based on the best interest of the Children and the parties' prior contributions. We reiterate that it is the function of the trial court as fact-finder to weigh the evidence presented and to assess the credibility of witnesses. *Green*, 783 A.2d at 791. The court again found Mother's testimony credible regarding summer camps. On the other hand, Father did not present any evidence to show that summer camp, which has been a consistent part of the Children's lives, was not beneficial to them.

Additionally, Father's reliance on *Horowitz*, *supra*, is misplaced. In *Horowitz*, the wife claimed the trial court erred in failing to require husband to pay $3,100.00 for the daughter's summer "teen tour" across the country, as required in the separation agreement for summer camp tuition. *Horowitz*, 600 A.2d at 986. On appeal, a panel of this Court found the claim was without merit based on the following:

Although husband agreed in other years to pay for summer camps and related programs, we agree with the trial court's finding that the cross-country "teen tour" was of a far different nature than the other camps, and at a much greater cost. Thus, even though husband paid for other programs which were not

> defined strictly as summer camps, he was not obligated to pay for Jennifer's "teen tour," and the trial court found correctly husband was not required to reimburse wife for this expense.

*Id.* at 986-987. Here, the record does not reflect that the Children's summer camps were far different from the camps they had done in the past or were at a much greater cost. Therefore, we find no abuse of discretion on the part of the trial court in determining that Father should pay a portion of the Children's summer camp expense. Accordingly, this argument is without merit.

With respect to his eighth argument, Father claims the court erred in determining he was obliged to pay part of the medical expenses because there was no proof of payment. Father's Brief at 22. He states the court misconstrues his argument as solely challenging the Children's orthodontia expense. Father contends his issue is "that he is being required to reimburse Mother when decisions that led to the medical bills were made unilaterally by Mother, he has not been presented with the bills or the insurance coverage, and the bills may not have been satisfied." *Id.* at 22-23.

Contrary to Father's argument, he did specify the Children's orthodontia bills in his Rule 1925(b) concise statement: "The trial court erred in its determination of Father's obligation to pay part of the medical expenses for children as the Court accepted documentation with no proof that medical expenses were actually paid (**that is the orthodontic**

**payment plan**).” Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b), 5/13/2013, at unnumbered 2 (emphasis added).

As the trial court properly noted:

The law of the Commonwealth is well established that a party complaining on appeal of the admission of evidence objected to in the court below will be limited to the specific objection made at trial.  ***Aiello v. SEPTA***, 687 A.2d 399, 403 (Pa. Commw. 1996).  A failure to object to the admission of evidence ordinarily constitutes a waiver of the right to object to the admissibility of the evidence or to its use as legal evidence.  ***Jones v. Treegoob***, 249 A.2d 352, 367 (Pa. 1969).  A party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court.  ***Hong***, 765 A.2d at 1123. Furthermore, this Court is free to choose to believe all, part, or none of the evidence presented.  ***Stokes*** [***v. Gary Barbera Enterprises, Inc.***, 783 A.2d 296, 297 (Pa. Super. 2001)]. Here, Mother submitted evidence of unreimbursed medical expenses for the children as Exhibit M-5 and Exhibit M-6. Exhibit M-5 included the orthodontic payment plan bill for [H.S.]. Father’s failure to object to the admission of documentation concerning the orthodontic payment plan constituted a waiver of the right to object to the admissibility of the evidence or to its use as legal evidence.  As a result, th[e] Court was free to consider all of the evidence concerning orthodontic medical expenses and determine whether that evidence corroborated with the parties’ testimony.  Based on Exhibit M-5, th[e] Court properly concluded that the orthodontia bill corroborated with Mother’s testimony that she paid $4,800.00 for [H.S.]’s orthodontia expenses and the bills marked “outstanding” meant Father had not paid his portion of unreimbursed medical expenses.

Trial Court Opinion, 6/12/2013, at 19-20.

A review of the record confirms that Father failed to object to the admission of outstanding medical bills with respect to the Children.  ***See*** N.T., 1/9/2013, at 22-27.  Therefore, we see no abuse of discretion with the

court imputing the outstanding unreimbursed orthodontia expenses to Father. Accordingly, this argument fails.

Next, Father complains the court erred in determining his contribution to the unreimbursed medical expenses because no documentation of those expenses was presented. Father's Brief at 23. Specifically, he states that according to the March 20, 2013, supplemental order, the parties were required to produce documentation of unreimbursed medical expenses to the other party no later than March 31st of the following calendar year, in which the final medical bill to be allocated was received. *Id.* Father alleges Mother violated the order with respect to the expenses incurred in 2012 because she never personally supplied him with the bills and he was never provided with concrete information about the orthodontia treatment. He contends the bills only became known to him when the "petitions" were filed. *Id.* Moreover, he states that because "these petitions were filed a significant amount of time after some of the final medical bills were received, he necessarily objects to the untimely production of them." *Id.* at 24. Further, he states he "could not have raised th[e] specific issue below because it was only when the Supplemental Order explicated the timeliness requirement that Father could object that the bills have not been received in a timely fashion." *Id.*

By way of background, in the March 20, 2013, supplement order, with respect to Father's 2011 income, Father's 2012 income, and Mother's 2013 income, the court provided, in relevant part:

2. From June 21, 2011 – January 8, 2012

…

c.  The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child.  Unreimbursed medical expenses of the children that exceed $250 annually shall be allocated between the parties.  The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.

…

3. From January 9, 2012 – December 31, 2012

…

c.  The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child.  Unreimbursed medical expenses of the children that exceed $250 annually shall be allocated between the parties.  The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.  The unreimbursed medical expenses are to be paid as follows:

1) 57% by Father and 42% by Mother.  Father is to contribute 57% of unreimbursed medical expenses incurred from January 9, 2012 – December 31,

2012. Accordingly, Father shall pay 57% of $5,190.10 and $666.23, which totals $3,338.11. Thus Father is ORDERED to pay $3,338.11 directly to Mother[.]

…

4. From January 1, 2013 – Forward

…

c. The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child. Unreimbursed medical expenses of the children that exceed $250 annually shall be allocated between the parties. The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received. The unreimbursed medical expenses are to be paid as follows:

1) 56% by Father and 44% by Mother. Thus, Mother is to provide Father with unreimbursed medical expenses and Father is to contribute 56% of any and all unreimbursed medical expenses incurred from January 1, 2013 – Forward.

Supplemental Order, 3/20/2013, at 20-23.

With respect to unreimbursed medical expenses, Pa.R.C.P. 1910.16-6(c) provides, in pertinent part:

(c) Unreimbursed Medical Expenses. Unreimbursed medical expenses of the obligee or the children shall be allocated between the parties in proportion to their respective net incomes. Notwithstanding the prior sentence, there shall be no apportionment of unreimbursed medical expenses incurred by a party who is not owed a statutory duty of support by the other party. The court may direct that obligor's share be added to his

or her basic support obligation, or paid directly to the obligee or to the health care provider.

…

(3) Annual expenses pursuant to this subdivision (c), shall be calculated on a calendar year basis. In the year in which the initial support order is entered, the $ 250 threshold shall be pro-rated. **Documentation of unreimbursed medical expenses** that either party seeks to have allocated between the parties shall be provided to the other party **not later than March 31 of the year following the calendar year** in which the final bill was received by the party seeking allocation. For purposes of subsequent enforcement, unreimbursed medical bills need not be submitted to the domestic relations section prior to March 31. **Allocation of unreimbursed medical expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.**

Pa.R.C.P. 1910.16-6(c) (emphasis added).

We note that the only part of the supplemental order that Father makes reference to is on page 20, which actually refers to the unreimbursed medical expenses from June 21, 2011 to January 8, 2012,[5] and not the 2012 medical expenses he complains of in his brief.[6] Nevertheless, as the trial court properly found:

Father never objected to the admission of unreimbursed medical expenses on the basis that the unreimbursed medical expenses were not presented to Father prior to March 31st of the

---

[5] With respect to these expenses, the court stated no evidence was presented and therefore, Father was not required to contribute. Supplemental Order, 3/20/2013, at 20-21.

[6] Father does not reference or present any evidence regarding the 2013 medical expenses and therefore, we limit our analysis to the 2012 medical expenses.

years in question. As stated previously objections must be timely and specific. *Hong*, 765 A.2d at 1123. The record shows that Father claimed that Mother never presented him with unreimbursed medical expenses or communicated about the medical bills, but Father never specifically raised the issue that the bills were not presented to Father prior to March 31st of the years in question. The law has long been settled in Pennsylvania that issues may not be raised for the first time on appeal. *Truesdale ex rel. Truesdale v. Albert Einstein Medical Center*, 767 A.2d 1060, 1063 (Pa. Super. Ct. 2001).

Even if Father had raised the issue properly at the trial Court level, th[e] Court's decision is still correct because the law provides that allocation of unreimbursed medical expenses for which documentation is not timely provided to the other party shall be within the discretion of the court. *See* Pa.R.C.P. 1910-16-6(c)(3). As such, th[e] Court has discretion to allocate unreimbursed medical expenses for which documentation is not timely provided to the other party.

Furthermore, th[e] Court noted Father's contradictions regarding unreimbursed medical bills. Father initially testified that he never received any medical bills, but later admitted that Mother attached the medical bills to her court filings, which were served to him for his review. Th[e] Court noted that on January 9, 2013, Father filed a Reply to Mother's October 11, 2012 Emergency Motion for an Evidentiary Hearing, admitting Mother provided him medical bills on April 27, 2012 or at the parties' conference on July 16, 2012. In Father's Reply, Father stated he would forward a check for fifty-eight percent (58%) of the unreimbursed medical expenses beyond $250.00, which is the responsibility of Father with the exceptions of the bill for braces. *See* Father's Reply, 1/9/13, at 5. Father's Reply is an admission that he received the 2012 medical bills before March 31st, of 2013, which is the following year. Therefore, th[e] Court did not err in ordering Father to contribute to unreimbursed medical expenses as they were presented to Father prior to March 31 of the year following the calendar year.

Trial Court Opinion, 6/12/2013, at 20-21. The record supports the court's

determination. We emphasize while Father may not have received the

March 20th order until that time, the statute is clear that "documentation of

unreimbursed medical expenses… shall be provided to the other party not later than March 31 of the year following the calendar year." Pa.R.C.P. 1910.16-6(c)(3). As such, Father would have been on notice that he was required to object to the lack of documentation that Mother provided to him for any year pursuant to the Rule. Moreover, pursuant to Pa.R.C.P. 1910.16-6(c)(3), it was at the trial court's discretion where documentation was not timely provided. Therefore, we conclude the trial court did not abuse its discretion when charging Father with the unreimbursed medical expenses.

Next, Father claims the court erred in failing to explicitly consider Mother's personal injury settlement in its child support calculation. He states that the official note to Pa.R.C.P. 1910-16-2(a)(8), relied on by the trial court, did not give the court "discretion to lower the amount of the award or analyze how the award was used. It is clear that a settlement amount is considered income available for purposes of child support." Father's Brief at 25 (citation omitted). Moreover, he states the court erred by including the settlement award by increasing the number of Mother's weekly work hours based on the following:

> If the $7,000 personal injury settlement was truly considered for 2012, Mother's income would be much greater, even considering the slight increase in Mother's hourly rate in 2013, than her income in 2013. An additional 2.5 hours per week for one year at Mother's 2012 hourly rate of $17.03 per hour only accounts for an increase of $2,213.90 when the entire $7,000 personal injury settlement either should have been included fully by the Trial Court in Mother's 2012 income or the Trial Court should

have explained how the remainder of the $7,000 will be treated in future years.

*Id.* at 26.

Pursuant to the support guidelines, the "[m]onthly gross income is ordinarily based upon at least a six-month average of all of a party's income." Pa.R.C.P. 1910.16-2(a). The statute sets forth the different types of income, which are included. *Id.* Relevant to this issue is income from "other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source." Pa.R.C.P. 1910.16-2(a)(8). The official note to Rule 1910.16-2(a)(8) provides, in pertinent part:

> The trial court has discretion to determine the most appropriate method for imputing lump sum awards as income for purposes of establishing or modifying the party's support obligation. These awards may be annualized or they may be averaged over a shorter or longer period of time depending on the circumstances of the case. They may also be escrowed in an amount sufficient to secure the support obligation during that period of time.

Pa.R.C.P. 1910.16-2(a)(8), Official Note.

Here, the court found the following:

> This court incorporated the sound policy of this Commonwealth that in child support cases a court must "consider the value and extent of their … other financial resources." *Dugery v. Dugery*, 276 Pa. Super. 51, 54, 419 A.2d 90, 91 (1980).
>
> …

- 32 -

Unlike Father, Mother was not terminated from her employment and has year-long physical custody of the children without any type of assistance from Father unless court-ordered. Mother testified that she received $7,000 from a personal injury settlement in 2012. Mother stated that she used the award to pay bills and the outstanding mortgage on the house, which benefited the children. Mother's testimony indicates that she used the funds to provide continued stability and continuity for her and the children instead of using the funds to maintain a higher standard of living for herself. Th[e] Court took Mother's testimony into consideration. To be fair, th[e] Court included Mother's settlement award to her income by increasing the number of her weekly work hours from 37.5 to 40. Th[e] Court concedes that it failed to explain how it allocated Mother's settlement award for 2012. Despite such harmless error, this Court properly used its discretion to determine the appropriate method for imputing Mother's settlement award in setting forth its Support Order.

Trial Court Opinion, 6/12/2013, at 21-22.

Based on the trial court's explanation in its opinion, and in accordance with the official note to Rule 1910.16-2(a)(8), we do not find that the trial court has abused its discretion in determining the most appropriate method for imputing Mother's settlement awards as income for purposes of establishing her support obligation. Furthermore, other than bald assertions, Father has not presented any case law or evidence demonstrating that its methodology was an abuse of discretion. Accordingly, his tenth claim is without merit.

In Father's penultimate issue, he contends the court erred in issuing a support order in which the aggregate obligation was in excess of the federal statute that caps an obligor's child support obligation at no more than 65% of his net income. Father's Brief at 26. First, he states the court erred in

dismissing this claim for failing to cite authority because he raised it in his concise statement and therefore, he did not have to cite to authority. *Id.* Additionally, he argues his garnishments will exceed 65% of his disposable income, even before his obligation for unreimbursed medical expenses over $250.00 is considered, and therefore the court's order exceeded the maximum for which he can be responsible under the Federal Consumer Credit Protection Law, 15 U.S.C. §§ 1671-1677. *Id.* at 27.

Here, the trial court found the issue was waived for failure to "cite even one case in support of his position." Trial Court Opinion, 6/12/2013, at 23. We are compelled to disagree. Pursuant to Pennsylvania Rules of Appellate Procedure, a concise statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement." Pa.R.A.P. 1925(b)(4)(ii). Therefore, while it would have been advantageous to identify the federal guideline Father was relying on, Father was not required to cite authorities.

Turning to the merits of the claim, the Federal Consumer Credit Protection Law provides, in pertinent part:

> (2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed--

> …

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

15 U.S.C § 1673(b)(2).

In conjunction with the federal statute, Pennsylvania Rule of Civil Procedure 1910.21 addresses the withholding of an obligor's income, in relevant part, as follows:

(a) Immediate Income Withholding. Every order of court shall contain an immediate order for the withholding of income unless (1) there is no overdue support owing under the order and (2) either the court finds there is good cause not to require immediate income withholding or the parties agree in writing to an alternative arrangement.

(b) Initiated Income Withholding. If there is no immediate income withholding pursuant to subdivision (a), and nonpayment of the support order causes overdue support to accrue, the court shall enter an order for the immediate withholding of income.

…

(e) Notice to Obligor. Objections. A notice of entry of an order for income withholding shall be served on the obligor. **The obligor may object to the order in writing or by personal appearance before the county domestic relations section within ten days after issuance of the notice**. **The grounds for an objection are limited to the following mistakes of fact**: … (iii) **the amount being withheld exceeds the maximum amount which may be withheld under the**

**federal Consumer Credit Protection Act, 15 U.S.C. § 1673**.
If a mistake of fact has occurred, the order shall be modified
accordingly.

Pa.R.C.P. 1910.21(a), (b), (e) (emphasis added).

Here, Father did not file objections to the March 20, 2013 support order, to which he takes issue in a timely manner, within ten days following notice of the order. **See** Pa.R.C.P. 1910.21(e). Therefore, the court did not err in denying his claim.[7] Accordingly, we need not address it further.

Lastly, Father argues the court erred by failing to explore undisclosed financial contributions to Mother. Father's Brief at 29. Specifically, he states:

> Assuming for argument that it was appropriate for Father to pay a portion of the cost of parochial school, Father implored the court to evaluate the portion of the fee for which the Mother was responsible. Father questioned the true income of Mother's household given that her net pay after babysitting expenses leaves her with very little to cover shelter, food, and clothing expenses for the entire year.

**Id.**

Regarding this argument, the trial court found the following:

> With regard to this allegation, Mother testified that she was not receiving financial contributions from other sources. Father offered no evidence or testimony to contradict her testimony and support this allegation. As such, th[e] Court was forced to make a credibility determination and decide this issue accordingly. Such credibility determinations are within the sole province of th[e] Court and there exists no evidence which would hint at an

---

[7] **See Craley v. State Farm Fire & Cas. Co.**, 895 A.2d 530, 532-33 (Pa. 2006) (holding that this Court may affirm on any basis).

abuse of discretion. Therefore, this error asserted by Father is without evidentiary or factual support.

Trial Court Opinion, 6/12/2013, at 24.

We agree with the court's conclusion. As stated above, the trial court was in the position to weigh the evidence and assess the credibility of the witnesses. *Green*, 783 A.2d at 791. Here, the court found Mother's testimony credible. Moreover, Father makes unsubstantiated claims that Mother was receiving income from other sources. Accordingly, Father's final argument fails.

In conclusion, we affirm in part, and vacate in part, specifically with respect to Father's seventh claim regarding his health insurance contribution. With respect to this issue, the trial court acknowledged its error and requested a remand for recalculation to include an appropriate allocation of Father's medical insurance payments in accordance with Pa.R.C.P. 1910.16-6(b).

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished

President Judge Emeritus Ford Elliott joins the memorandum. Judge Strassburger files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014